WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dansons US LLC, | No. CV-20-01853-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| ASmoke USA LLC, | |
| Defendant. | |

Before the Court is Defendant ASmoke USA LLC's ("ASmoke") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") (Part of Doc. 13). For the reasons set forth below, the Motion is granted.

**I.    BACKGROUND**

Plaintiff, Dansons US LLC ("Dansons"), is an Arizona limited liability corporation with its principal place of business in Arizona. (Doc. 28 ¶ 9.) Dansons manufactures and sells "high quality barbeque grills, smokers, and related products to consumers nationwide." (*Id.* ¶ 18.) Part of Dansons' portfolio of brands includes PIT BOSS®, which has developed a "large following[] among grilling enthusiasts" and enjoys a "large following on social media and in popular culture." (*Id.*) Dansons alleges that it has exclusively used the trademark "BIGGER, HOTTER, HEAVIER" (the "Dansons Trademark") in connection with its products since September 2015. (*Id.* ¶ 19.) Dansons filed a trademark application seeking registration of the Dansons Trademark, which was unopposed. (*Id.* ¶ 20.) After Dansons filed its Complaint, the Dansons Trademark became

registered. (Doc. 16-6 at 2.)

ASmoke is a Delaware limited liability company with its principal place of business in Delaware. (*Id.* ¶ 10; Doc. 13 at 7.) ASmoke also markets and sells barbecue grills that are made by a "non-party manufacturer." (Doc. 13 at 7.) ASmoke's grills included an under-the-lid printout that was nearly identical to what Dansons used and displayed the phrase "BIGGER, HOTTER, HEAVIER." (*See* Doc. 28 ¶ 35.) ASmoke sold sixty-three allegedly infringing grills in the United States. (Doc. 13 at 6.) Of those sales, "only three were made in Arizona, and one of those sales was to [Dansons]." (*Id.*) After these sales, ASmoke contends that it "discontinued use of the allegedly infringing print-out upon receipt of a cease and desist letter from [Dansons]." (*Id.*) ASmoke's owner, Michael Ying, "is also the owner of Dansons' former factory." (Doc. 28 ¶ 2.) Dansons alleges that ASmoke has "engaged in 'individualized targeting' of Dansons as retaliation for Dansons reducing, and, eventually ending, its business relationship with Mr. Ying's factory." (*Id.* ¶ 15.)

In September 2020, Dansons filed a Complaint (Doc. 1) and Motion for Preliminary Injunction (Doc. 2) in the District of Arizona alleging trademark infringement, trade dress infringement, false designation of origin under the Lanham Act, and unfair competition under Arizona common law. In response, ASmoke filed its Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. (Doc. 14.) The Court denied the Motion for Preliminary Injunction,[1] granted ASmoke's Motion to Dismiss for Failure to State a Claim, and took the issue of personal jurisdiction under advisement. (Doc. 23.) Shortly thereafter Dansons filed its First Amended Verified Complaint, adding allegations to bolster its claims and jurisdictional statement. (Doc. 28.) The Court then ordered the parties to submit a Joint Supplemental Brief to address whether any of the new allegations in the First Amended Verified Complaint alter the parties' personal jurisdiction arguments. (Doc. 30.) The parties timely filed the Joint Supplemental Brief. (Doc. 31.)

---

[1] Dansons has since filed a Renewed Motion for Preliminary Injunction. (Doc. 26.)

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). "[I]n the absence of an evidentiary hearing," a plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal citation omitted). When examining whether there is a prima facie showing of jurisdictional facts, any "uncontroverted allegations in [the complaint] must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citations omitted); *see also Sher*, 911 F.2d at 1361 (treating plaintiff's allegations as true).

## III. DISCUSSION

### A. Personal Jurisdiction Overview

As a general matter, if a relevant federal statute does not provide for personal jurisdiction, a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Arizona's long-arm statute is coextensive with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a);[2] *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569 (1995) (discussing the intention behind Arizona's long-arm statute). Consequently, the analyses of personal jurisdiction under Arizona law and federal due process are the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise

---

[2] Arizona's long-arm statute states that a court "may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution."

of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). Both parties agree that only specific jurisdiction applies.

### B. Specific Personal Jurisdiction

The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs but subsequently shifts to the defendant to show the third. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

The first required element of specific jurisdiction, "purposeful direction,"[3] is

---

[3] Although "purposeful availment" is often used as shorthand to mean both purposeful availment and purposeful direction, it is important to understand them as distinct concepts requiring distinct tests. *Schwarzenegger*, 374 F.3d at 802. The precise analysis depends on the type of claim brought – "for claims sounding in tort, [the Court] appl[ies] a purposeful direction test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1212. Because the claims brought by Dansons in its First Amended Verified Complaint (Doc. 28) are tort-like, the Court applies the purposeful direction test. *See, e.g.*, *Mavrix Photo*, 647 F.3d at

measured using the "effects" test put forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). "The proper question is not where the plaintiff experiences a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

### 1.  Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Accepting Dansons' allegations as true, ASmoke committed intentional acts by infringing on its intellectual property rights, which is the basis for each claim. (*See* Doc. 28 ¶¶ 4, 28, 51, 53, 61, 69, 76, 85, 91.) Accordingly, *Calder*'s first part is satisfied.

### 2.  Express Aiming

An "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state." *Picot*, 780 F.3d at 1214 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)) (internal quotation marks omitted). The precise form of analysis depends largely on the "specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Dansons alleges that ASmoke has engaged in "individualized targeting" by selling infringing grills into Arizona "as retaliation for Dansons reducing and, eventually ending, its business relationship with Mr. Ying's factory." (Doc. 28 ¶¶ 14–15.) And these grills were sold "while ASmoke's public advertisements and social media pages" included the infringing

---

1228 (holding copyright infringement to be a "tort-like cause of action," and then applying purposeful direction test); *Best W. Int'l Inc. v. I-70 Hotel Corp.*, No. CV11-1281-PHX-FJM, 2012 WL 2952363, at *2 (D. Ariz. July 19, 2012) (using purposeful direction test in a trademark infringement dispute).

trademark. (*Id.* ¶ 14.) Dansons contends that, together, this "individualized targeting" and selling of grills into Arizona satisfies the express aiming requirement. (*Id.* ¶ 16.) The Court will address each of these arguments in turn.[4]

First, Dansons' attempt to show express aiming through two sales to Arizona residents falls short.[5] The Supreme Court in *Walden v. Fiore* recognized that a plaintiff cannot establish specific personal jurisdiction through nonspecific contacts with the forum state, as those contacts would be "'random, fortuitous, or attenuated.'" 571 U.S. at 290. Dansons' argument here boils down to ASmoke's two sales to Arizona customers. There are no allegations concerning how these two Arizona buyers purchased ASmoke's allegedly infringing grills or what further efforts ASmoke made to purposefully direct these sales to Arizona. Dansons' assertion that these grills were sold "while ASmoke's public advertisements and social media pages" included the allegedly infringing trademark also does not help show that ASmoke expressly aimed these contacts to Arizona. Following *Walden*'s logic, Dansons cannot establish express aiming by pointing to two random, fortuitous, and attenuated sales. Without more, these two sales cannot bolster Dansons' personal jurisdiction claim.

Second, Dansons argues that ASmoke's knowledge that it resides in Arizona and ASmoke's allegedly infringing behavior impacting Dansons establishes personal jurisdiction. (Doc. 16 at 7–8.) This argument ignores binding precedent. In *Axiom Foods*, the Ninth Circuit clarified that, after *Walden*, a plaintiff can no longer show that a defendant expressly aimed at the forum state by alleging only that the defendant knew of the

---

[4] Dansons relies heavily on this District Judge's decision in *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, No. CV-19-05216-PHX-MTL, 2020 WL 3893563 (D. Ariz. July 10, 2020), where this Court found personal jurisdiction. (*See* Doc. 31.) In *BBK*, the defendant actively proposed to "co-brand" its corporate logo with the plaintiff's registered trademark. (Doc. 16 at 1–2, No. CV-19-05216.) The Complaint also alleged that the defendant unilaterally emailed the plaintiff's representatives in Arizona to order "well above 10,000 pieces" of its product. (Doc. 1 ¶¶ 9–15, No. CV-19-05216; *see also* Doc. 16 at 1–2, No. CV-19-05216.) Dansons' allegations here fall far short of what occurred in *BBK*, rendering the comparison unpersuasive.

[5] The Court agrees with ASmoke that the third sale into Arizona, which Dansons itself initiated, cannot be considered for this personal jurisdiction analysis. *See Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

- 6 -

plaintiff's forum connections and could have reasonably foreseen harm in that forum. 874 F.3d at 1069–70. The test discredited in *Axiom Foods*, and advanced by Dansons here, impermissibly undermines the due process concerns at the heart of personal jurisdiction by shifting the focus away from the defendant's contacts with the forum state in favor of the plaintiff's contacts. *See Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*, No. CV-19-04685-PHX-SMB, 2020 WL 2512785, at *5 (D. Ariz. May 15, 2020) (recognizing that this approach "distorts the proper focus of the 'minimum contacts' inquiry"); *see also Picot*, 780 F.3d at 1214 (stating that the "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state.") (citation omitted). That Dansons feels the impact of the alleged infringement in Arizona turns the focus to its own connections here, which is not relevant in considering ASmoke's connections to Arizona. The same goes for Mr. Ying's apparent knowledge of Dansons being an Arizona company and allegedly targeting Dansons for their failed business relationship. Dansons has therefore failed to allege that ASmoke has expressly aimed its contacts to Arizona.

As to Dansons' individualized targeting assertion, the Ninth Circuit made clear that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc.*, 874 F.3d at 1070. Dansons' conclusory allegation of individualized targeting based on Mr. Ying's past relationship with it, combined with two random sales, cannot combine to establish minimum contacts. As previously discussed, Dansons has not alleged that this targeting was purposefully directed and expressly aimed at the forum state.

Because Dansons has failed to show ASmoke alleged infringement was expressly aimed at Arizona, the Court need not advance to *Calder*'s third requirement, *Schwarzenegger*, 374 F.3d at 807 n.1, or the remaining prongs of the minimum contacts test. *Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 936 (D. Ariz. 2016). Dansons has failed to meet its burden to prove that the Court has personal

jurisdiction over ASmoke. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law"). The Court must therefore dismiss this action for lack of personal jurisdiction.

IV.     **CONCLUSION**

Accordingly,

**IT IS ORDERED granting** ASmoke's Motion to Dismiss for Lack of Personal Jurisdiction (Part of Doc. 13).

**IT IS FURTHER ORDERED denying as moot** Dansons' Renewed Motion for Preliminary Injunction (Doc. 26).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 11th day of December, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge